Catherine McGuire, by John McGuire, Her Next Friend, Appellant, v. Robert F. Amyx and Martin C. Woodruff.—297 S. W. 968.

Division One, September 16, 1927.

1. **NEGLIGENCE: Pleading: Inconsistent Defenses: General Denial: Confession and Avoidance.** Where the petition alleges that the defendant physician "negligently and carelessly failed to make any sufficient examination of plaintiff or any inquiry into the history of any ailment she might have had, and negligently and carelessly diagnosed her condition as being

that of one suffering with smallpox," a general denial of these allegations, and a plea of the ordinance requiring him to make a report to the Health Commissioner of patients afflicted with contagious diseases, are not inconsistent. The latter plea is not a confession and avoidance, and does not overcome the general denial.

2. NEGLIGENCE: Evidence: Custom: Pleading. Evidence that a physician, charged with negligently and carelessly diagnosing as smallpox a rash on the face and body of a child, followed the custom of other physicians under like conditions in reporting suspected cases of smallpox to the health department of the city, is admissible, not as a defense, but as tending to show the conduct of prudent men under similar circumstances, and may be considered by the jury with other facts and circumstances in deciding the issue of negligence properly fixed by the instructions; and not being a defense, it is not necessary to plead it.

3. ————: ————: Exclusion: No Proffer. In an action for damages based on a charge that defendant physicians carelessly and negligently diagnosed plaintiff's disease as smallpox when they observed a rash upon her forehead and hands and caused her to be sent to a hospital where were many patients afflicted with smallpox, the refusal of the court to permit a witness to testify as to the condition and appearance of such patients, and to permit another witness to state her own symptoms when she first contracted smallpox, although exceptions were saved to the refusal, is not for review on appeal, where appellant made no offer of the proof.

4. ————: Instruction: Smallpox: Report to Health Authorities: Not a Patient: Terms of Ordinance. Plaintiff, a seven-year-old girl, went with her mother to the office of a physician who was treating the mother for some ailment, and sues the physician for wrongfully reporting to the health authorities of the city that she was afflicted with smallpox. The court instructed the jury that "if you find that plaintiff came under the observation of defendant, a practicing physician, at his office, and that plaintiff presented physical evidences which indicated to said physician, or which to a reasonably prudent and informed physician would indicate, the presence of smallpox, then it became the duty of defendant to report said facts to the health authorities of the city, and you cannot find against defendant for so doing, even though you should find that as a matter of fact plaintiff was not suffering from said disease." Held, that the instruction was not erroneous because it did not require the jury to find that defendant prescribed for and attended plaintiff as a physician, or, in other words, because defendant did not bring himself within the terms of the ordinance which required every physician "who shall prescribe for or attend any person in the city" affected with smallpox "after discovering the existence of such disease" to make a report thereon, in writing, to the Health Commissioner. Public policy makes it the duty of any citizen, acting in good faith and on reasonable grounds, to report cases of persons afflicted with dangerous contagious diseases, to the health authorities, in order that an examination may be made by experts and the public health conserved.

5. ————: Qualified Privilege: Report to Health Commissioner. The report to the health authorities of a case of suspected smallpox by a physician or other citizen, if made in good faith and on reasonable grounds, is a qualifiedly privileged act.

6. INSTRUCTION: Error Invited by Appellant. Appellant cannot complain of an error in respondent's instruction, if she invited the court to submit her case on the same erroneous theory.

7. ————: No Evidence: Erroneous but Not Prejudicial. Where the seven-year-old plaintiff went with her mother to the office of defendant physician,

who was treating the mother for another ailment and who reported to the health commissioner that plaintiff had physical evidences of smallpox, an instruction which tells the. jury that defendant was plaintiff's attending physician if the mother consented and acquiesced in defendant's examination of plaintiff, and by such physical examination and diagnosis defendant reached the conclusion that her condition indicated smallpox and so reported, is erroneous where there is no evidence that the mother consented to or acquiesced in the examination. But the error is not prejudicial where the jury could not have returned a verdict for defendant under said instruction unless they first found the facts set forth in another correct instruction given, which authorized the jury to return a verdict for defendant, if from observation plaintiff presented physical evidences which indicated to defendant, and which to a reasonably prudent and informed physician would indicate, the presence of smallpox.

8. ———: **Assumption of Fact: Examination.** An instruction that "if you find and believe from the evidence that when defendant," the chief diagnostician of the health department, "examined the plaintiff, if you so believe and find, he had reasonable grounds to believe that the public health required that plaintiff be quarantined to prevent other persons from becoming infected with smallpox;" etc., does not assume that said defendant had examined plaintiff; and though the petition charged that he made a superficial examination, if the case was tried on the theory that there was an examination, and there was uncontradicted testimony to the examination, the instruction would not have been error if it had assumed the existence of the examination.

9. ———: **Smallpox: Commitment to Pesthouse: Wantonness: Reasonable Ground.** To find that the chief diagnostician of the health department was guilty of negligence in sending plaintiff, who was not afflicted with smallpox, to the hospital where many persons infected with smallpox were kept, and where she afterwards became sorely infected, it is not necessary to prove that he wantonly and recklessly pronounced her suffering from smallpox; on the other hand, he is not liable in damages if he had reasonable grounds to believe, from an examination, that the public health required her to be quarantined to prevent other persons from becoming infected, and in a belief, based on such grounds, that she had smallpox, committed her to the hospital. If he had such reasonable grounds he did not act wantonly or recklessly; and an instruction for him, based on such grounds, is only the converse of one for plaintiff presenting the theory of wantonness and recklessness.

10. **JUROR: Misconduct: New Trial.** The conduct of a juror may be improper, and yet not prejudicial. Where the juror, a member of a school board, during the pendency of the trial, wherein plaintiff sues physicians for wrongfully causing her to be sent to a smallpox-infested hospital, at a meeting of the board and superintendent insisted that pupils should be vaccinated, and incidently stated some of the facts of the pending case, but mentioned no names, or expressed an opinion of how the case should be decided, but later did join in the verdict for defendants, it cannot be ruled that his conduct was prejudicial on the theory that he had formed an unfavorable opinion of plaintiff's case before the testimony in her behalf had been concluded, or that the court abused its discretion in not granting a new trial on account of the juror's improper conduct.

Corpus Juris-Cyc. References: **Appeal and Error,** 3 C. J., Section 736, p. 825, n. 53; 4 C. J., Section 2620, p. 709, n. 26; Section 2733, p. 782, n. 45; Section 3015, p. 1033, n. 37. **Health,** 29 C. J., Section 90, p. 270, n. 53. Libel and Slander, 36 C. J., Section 244, p. 1263, n. 21. **New Trial,** 29 Cyc., p. 798, n. 74; p. 800, n. 93. **Physicians and Surgeons,** 30 Cyc., p. 1586, n. 64; p. 1590, n. 94. **Pleading,** 31 Cyc., p. 151, n. 39. **Trial,** 38 Cyc., p. 1666, n. 83; p. 1667, n. 85.

Appeal from Circuit Court of City of St. Louis.—*Hon. William A. Taylor*, Judge.

AFFIRMED.

*Laughlin, Frumberg, Blodgett & Russell* for appellant.

(1) A lay witness is competent to testify regarding the symptoms of a disease. Parker v. Ins. Co., 289 Mo. 73; Reardon v. Railroad, 215 Mo. 105, 134; Godfrey v. Light & Power Co., 299 Mo. 472, 488. (2) An instruction which assumes the existence of a disputed fact is erroneous. Hunt v. St. Louis, 278 Mo. 213; Morrell v. Lawrence, 203 Mo. 363; Glaser v. Rothschild, 221 Mo. 180; Simon v. Railroad, 231 Mo. 65; Crow v. Railroad, 212 Mo. 589; Williamson v. Railroad, 139 Mo. App. 481; Wilson v. St. Joseph, 139 Mo. App. 557; Bryan v. Lamp Co., 176 Mo. App. 716; Blair v. Light & Power Co., 201 Mo. App. 579. (3) It is not enough that a health officer may believe he has reasonable grounds to commit a person to a smallpox hospital, but the facts must appear which justify his action. Ex parte Shepard, 195 Pac. 1077; Crayton v. Larabee, 220 N. Y. 493; In re Smith, 146 N. Y. 68. (4) An instruction which simply submits legal conclusions is erroneous. Winslow v. Ry. Co., 192 S. W. 121; Albert v. Besel, 88 Mo. 150; W. W. Kendall Shoe Co. v. Bain, 46 Mo. App. 582; Barton v. City of Odessa, 109 Mo. App. 76. (5) An instruction should not be given where there is no evidence from which the jury could find the facts submitted. Wilkerson v. Eilers, 114 Mo. 245. (6) The court erred in refusing to grant a new trial on account of the misconduct of juror George Graf. Blalock v. Phillips, 38 Ga. 216; Bennett v. Howard, 3 Day, 219; Wightman v. Butler County, 83 Iowa, 691; Jewsbury v. Sperry, 85 Ill. 56; Wiggin v. Plumer, 31 N. H. 251; Cooper v. Carr, 161 Mich. 405; McDaniels v. McDaniels, 40 Vt. 363; Ensign v. Harney, 15 Neb. 330; Bradbury v. Cony, 62 Me. 223.

*Jones, Hocker, Sullivan & Angert* for respondent Amyx.

(1) A directed verdict should have been ordered for defendant Amyx. (2) The instructions of defendant properly declared the law. If not, they declared the same law as that declared by appellant's instructions, and she is therefore estopped to complain. Olfermann v. Railway Co., 125 Mo. 415. (3) The court did not err in failing to sustain appellant's motion for a new trial on account of the actions of the juror Graf. Kennedy v. Holladay, 105 Mo. 33; Feary v. St. Ry. Co., 162 Mo. 75; Fendler v. Dewald, 14 Mo. App. 60;

Tatlow v. Grantham, 66 Mo. App. 509; Paramore v. Lindsey, 63 Mo. 63.

*Julius T. Muench* and *Oliver Senti* for respondent Martin C. Woodruff.

(1) In the absence of an offer of proof, the action of the trial court in sustaining an objection to a question is not reversible error. Bank of Slater v. Union Station Bank, 283 Mo. 308; Messer v. Gentry, 290 S. W. 1016. (2) Instructions on behalf of defendant Woodruff are not erroneous in that they assume that he examined the plaintiff. Where the testimony of both sides is that a fact exists, it is not reversible error for an instruction to assume that fact. 38 Cyc. 1667; Phelps v. Zinc Co., 218 Mo. 572. (3) Instructions 4 and 5 do not assume that the plaintiff had smallpox. (a) The petition charges that the negligence of defendant Woodruff consisted in wanton disregard of his duties, and in wantonly and recklessly pronouncing plaintiff to be suffering with smallpox. (b) In the absence of such wantonness, the jury could properly find for defendant Woodruff, even if plaintiff did not actually have smallpox. (4) A health officer who is authorized to take action for the prevention of the spread of disease is not liable for injuries resulting from such reasonable and customary measures as he may adopt or direct. 29 Cyc. 270. (5) In the absence of a contrary showing, every presumption on appeal is in favor of the correctness of the ruling on a motion for a new trial. 4 C. J. 782. In this State this rule applies to motions for a new trial based on misconduct of jurors. State v. Latimer, 116 Mo. 524; Dysart-Cook Mule Co. v. Reed, 114 Mo. App. 307; Turnhow v. Railways Co., 277 Mo. 644. (6) The petition charges that the negligence of defendant Woodruff consisted of acts of wantonness. (a) Acts of wantonness do not constitute negligence. Raming v. Street Ry., 157 Mo. 497. (b) The demurrer to the evidence at the close of plaintiff's case should have been sustained. Raming v. Street Ry., 157 Mo. 507. Where a petition states no cause of action, its sufficiency may be challenged at any time. Sexton v. Street Ry. Co., 245 Mo. 254. (c) Even if there had been proof of negligence, the jury would not have been warranted in finding that defendant Woodruff was guilty of wantonness. Evans v. Railroad Co., 289 Mo. 493.

GANTT, J.—This is the suit of Catherine McGuire for damages in the sum of $30,000, brought by her next friend John McGuire, against Robert F. Amyx, Martin C. Woodruff and Michael J. Dwyer.

It is averred in the petition that the defendant Amyx is a physician of St. Louis; that defendant Woodruff is a physician and chief diagnostician of the Division of Health of St. Louis; that as such it was

his duty to carefully and skillfully examine all persons suffering from contagious diseases who might be brought to his attention, as well as such persons suspected of having such diseases, and to forward to the quarantine hospital such persons as appeared, upon a careful and skillful examination, to be suffering from smallpox; that in such examination it was his duty to use due care to determine if such persons were suffering from such disease; that the defendant Dwyer is a physician and superintendent of said hospital; that on the second day of May, 1919, plaintiff was in good health and not suffering from smallpox or other communicable disease, and on said day accompanied her mother, Mary J. McGuire, to the office of defendant Amyx, that said defendant might treat the mother; that at said time a slight and harmless rash had broken out on the body of plaintiff to a very slight extent; and upon the attention of said Amyx being casually called to such fact, he voluntarily and without being requested so to do made a hasty, superficial and negligent examination of plaintiff and announced that she was suffering from smallpox, called an ambulance and, against the protest of plaintiff's mother that plaintiff did not have smallpox and had no opportunity to contract the same, and regardless of the fact that she had no symptom indicative of said disease, caused her to be immediately taken to the City Dispensary as a person afflicted with smallpox; that the City Dispensary was in charge of defendant Woodruff as Chief Diagnostician, who made no inquiries as to the history of the case; and though plaintiff was in perfect health and suffering from no disease and showing no symptoms indicative of smallpox, said Woodruff, after the most superficial and casual glance at the small discolorations on plaintiff's hands and without making any other diagnosis, immediately ordered her sent to the quarantine hospital, to which place she was immediately taken and confined in a ward of said hospital with fifteen or more female persons afflicted with smallpox in all stages of that disease, where she was compelled to continuously associate with said persons from the second day of May, 1919, until the eleventh day of May, 1919; that during the time she was in the hospital she showed no symptom of smallpox or other contagious disease; that thereafter she was returned to her home in St. Louis apparently in good health, but plaintiff says that while in the hospital she contracted smallpox, and on the fifteenth day of May, 1919, suffered from chills, with a high fever and delirium, so that she had to be held in bed and so continued until the 21st day of May, 1919, followed by smallpox eruptions until the 25th day of May, 1919, at which time she was again sent to the hospital and confined until she had recovered on the third day of June, 1919; that by reason of the premises she suffered great pain and anguish—all of which was directly caused by the negligence and carelessness of the defendants in this, that the defendant Amyx negligent-

ly and carelessly failed to make a sufficient examination of plaintiff or a proper inquiry into the history of any ailment she might have had, and carelessly and negligently diagnosed her condition as being that of one suffering from smallpox, when a careful and skillful examination would have shown that no reliable symptoms of said disease existed; that the defendant Amyx further negligently and carelessly refused to vaccinate plaintiff to reduce the chances of said disease being communicated to her while in the hospital, and in negligently ordering an ambulance and sending plaintiff to the City Dispensary as a person suffering from smallpox; that defendant Woodruff, in wanton disregard of his duties as an officer and of the damages to which plaintiff was being exposed, wantonly and recklessly pronounced her to be suffering from smallpox and sent her to the hospital; that by reason of the premises plaintiff has been damaged, etc.

The answer of defendant Amyx was a general denial, with a plea of the ordinance requiring attending physicians to make immediate report to the Health Commissioner on the first discovery of a contagious disease. Further answering said defendant states:

"That the plaintiff came under his care, observation and attendance in connection with certain eruptions and pustules covering a large part of her body, and which defendant in good faith and in the exercise of care and prudence believed and diagnosed as smallpox; that in pursuance of his duty as a physician and in compliance with the ordinance hereinbefore set forth, he caused to be reported to the Health Commissioner that fact, the said disease of smallpox being infectious and contagious, whereupon the plaintiff was taken in charge by said commissioner, and plaintiff's ailment was also diagnosed by said Health Commissioner as smallpox and plaintiff was thereupon taken to quarantine as provided in Section 1592 of the Revised Code of General Ordinances of the City of St. Louis." Defendant Woodruff for answer states:

"That as such Chief Diagnostician it was his duty to examine with reasonable care and skill all persons suffering from contagious and communicable diseases, as well as all persons suspected of having such diseases, who were brought to his attention, and that it was his duty as such Chief Diagnostician to order the quarantine of all persons whom he had reasonable ground to believe were suffering from smallpox; and denies each and every other allegation in plaintiff's petition contained.

"Further answering defendant states that in the regular course of his employment as Chief Diagnostician of the Division of Health of the City of St. Louis, and in the course of the discharge of his duties as such officer, he examined the plaintiff in the manner and to the extent required by law, and that upon such examination being made

this defendant had reason to believe and did believe that the plaintiff was afflicted with smallpox, and that he directed her to be quarantined in the Koch Hospital in the discharge of his duty as a public official and for the purpose of preventing the spread of said disease.''

The reply was a general denial.

The court sustained a demurrer as to defendant Dwyer, submitted the case against the other defendants, resulting in a verdict in their favor; and plaintiff appealed.

The facts are as follows:

On the second day of May, 1919, Mrs. McGuire went to the office of Amyx, her family physician, for examination and treatment. Her seven-year-old daughter accompanied her, but not for examination or treatment. The appellant at this time had a ''breaking out'' on the palms of her hands, the soles of her feet, and there is testimony tending to show a similar condition existed on the shoulders, arms and forehead at the hair line. The doctor's attention was attracted to this condition and he concluded she was afflicted with smallpox. Upon his report the appellant and her mother were taken in an ambulance to the City Dispensary. Dr. Woodruff, the chief diagnostician, testified he examined appellant at the dispensary, was convinced she had smallpox, signed the commitment, and she was taken to Koch Hospital. During all this time the mother insisted appellant did not have smallpox. On arrival at the hospital appellant was confined in the smallpox ward with persons suffering from smallpox, where she remained until the eleventh day of May, 1919, and was discharged as cured. On Wednesday or Thursday after her discharge on Sunday appellant began to be chilly, was very sick with fever and was put to bed on the seventeenth of May. She vomited, was delirious and feverish, which condition continued for several days, when shot-like eruptions appeared on her face and body, and on the 25th of May, Doctors Woodruff and Jordan of the Health Department called at appellant's home on a report from Dr. Kane, who was then appellant's attending physician. They examined appellant, concluded she had smallpox, and again committed her to the hospital. On the third of June, 1919, she was again discharged as cured.

Evidence for appellant tended to show she had for several years a ''rash or prickly heat'' on her hands, feet and shoulders. It would disappear and come again. She attended school for two years, and during the months of January, February, March and April, 1919, attended school every day, played regularly with other children and visited the stores in the neighborhood—all up to the time of her first confinement in the hospital. No one in the neighborhood was at the time of her confinement or afterwards afflicted with smallpox, and the neighbors testified she appeared to be in good health and was about the neighborhood with other children.

Evidence for appellant further tended to show that while in the hospital the first time appellant was not sick and spent the time playing in the yard and helping the nurses. She had two little pimples on her face, and the rash remained on her hands and feet. She was not treated by a physician and on examination before her first discharge from the hospital her clothing was removed and there were no marks, scars or discoloration on her face, arms, body, legs or feet. It is admitted appellant had the smallpox after she left the hospital the first time. The evidence tends to show respondent Woodruff, on the 25th of May, 1919, called at appellant's home on a report from Dr. Kane, examined her and said she had chicken pox. Later he said it was smallpox, and that he would call Dr. Jordan, his assistant. He said: "We are not infallible. We can make mistakes." When Dr. Jordan examined appellant he said to Dr. Woodruff, "We can't hide this case at all; she has genuine smallpox." Both doctors examined the calendar, and Dr. Jordan said that is the right number of days. Appellant was taken to the hospital the second time on a stretcher, stayed in bed five or six days, was a mass of sores, would scream at night and had eruptions of her feet.

Evidence for respondents tended to show appellant was afflicted with smallpox at the time she was first confined in the hospital. It had reached the pustular stage at the hair line on the forehead, on the hands, arms and chest. No inquiries were made by defendants about the history of appellant's condition prior to the examination or if smallpox was prevalent in her neighborhood. Dr. Amyx testified he asked appellant how she had been, and the mother said she had some "prickly heat" and was better that day than she had been for several days. "This was after I made the examination and I told the mother I thought the child had smallpox. I did not inquire if the appellant had been feverish and vomiting or if there had been any opportunity for her to contract smallpox. I had sufficient information on the subject to know an actual eruption is preceded by symptoms. Those symptoms are chills and fever, lumbar pains, and in some cases in children convulsions. The symptoms appear in minor degrees before the eruptions and subside with the appearance of the eruptions. There is secondary fever at the period of pustulation. The discrete type of smallpox is where the pustules are separated from each other, and the confluent type is where they are so closely packed they flow together. The discrete type is the milder type. Appellant had a light case of smallpox. It was discrete on some parts of the body and confluent on other parts of the body. Persons afflicted with smallpox do not always have all the initial symptoms."

The evidence for respondents further tended to show that there could be recurrence of smallpox, but it is very unusual, and is the exception.

Dr. Woodruff testified he did not tell Mrs. McGuire appellant had chicken pox, did not try to conceal that it was smallpox, and did not state that he was mistaken before in the diagnosis of the case. On the contrary he called her attention to the evidence of the former attack.

The ordinance pleaded was admitted in evidence. Other facts will be noted.

Appellant contends the general denial and plea of the ordinance by respondent Amyx are inconsistent defenses; that the latter plea is a confession and avoidance and as such overcomes the **Inconsistent Pleas.** general denial. In support of this contention the following cases are cited: Shoe Co. v. McDonald, 138 Mo. App. 340; Price v. Mining Co., 83 Mo. App. l. c. 474; Bank v. Stone & Prickett, 93 Mo. App. l. c. 294; McCord v. Railroad, 21 Mo. App. 95. It is charged that Amyx "negligently and carelessly failed to make any sufficient examination of plaintiff or any proper inquiry into the history of any ailment she might have had, and negligently and carelessly diagnosed her condition as being that of one suffering from smallpox." By the general denial Amyx denies that he negligently made an examination of appellant and negligently caused appellant to be taken to the City Dispensary as a person afflicted with smallpox. In addition, he pleads the ordinance as requiring him to make a report to the Health Commissioner of patients afflicted with a contagious disease. The defenses are in no way inconsistent and do not fall within the rule announced in the cases cited.

In connection with the above contention it is claimed the court was in error in admitting testimony of other physicians tending to show that it was the custom of physicians in St. Louis to report suspected **Custom.** cases of smallpox to the Health Division of the city. Amyx pleaded the appellant came under his observation and he reported the case. The testimony was admitted as tending to show the practice and custom independent of the duty of physicians under the ordinance. The rule of negligence is fixed by the instructions, but this testimony was admissible as tending to show the conduct of prudent men under similar circumstances. It may be considered by the jury with other facts and circumstances in deciding the issue of negligence under the instructions. It was not offered or admitted as a defense; therefore, it was not necessary to plead it. [O'Mellia v. Railroad, 115 Mo. l. c. 221; Brunke v. Missouri & Kansas Tel. Co., 115 Mo. App. l. c. 38; Spencer v. Bruner, 126 Mo. App. l. c. 102.] The rule is stated in a standard text as follows:

"A negligent act, clearly shown to be such, cannot be justified on the ground of custom or usage, and evidence of such custom or usage is not usually admissible for that purpose. Evidence that the person charged with negligence followed the custom of other

persons in the same line of business will be received on the question whether he acted as a reasonably careful man would have acted under the circumstances of the particular case." [6 Thompson on Negligence, sec. 7882.]

These contentions are overruled.

Appellant contends the court was in error in refusing to permit the witness, Mrs. McGuire, to testify as to the condition and appearance of smallpox patients at Koch Hospital, and in refusing to permit the witness, Mrs. Maddock, to state the symptoms she had when she first contracted smallpox. Appellant excepted to these rulings, but made no offer of proof, and the question is not for review. [Bank of Slater v. Union Station Bank, 283 Mo. 308; Arfstrum v. Baker, 214 S. W. (Mo.) l. c. 860; Smith v. Riordan, 213 S. W. (Mo.) l. c. 64; Holzemer v. Ry. Co., 261 Mo. l. c. 411; Shelby County Ry. v. Dimmitt, 235 Mo. l. c. 492; Messer v. Gentry, 290 S. W. l. c. 1016.] This contention is overruled.

*No Proffer of Proof.*

Appellant contends the court was in error in giving Instruction No. 7, as follows:

"The court instructs the jury that if you find that the plaintiff came under the observation of the defendant, Dr. Amyx, a practicing physician of the State of Missouri, at his office, and that the plaintiff presented physical evidences which indicated to said defendant, and which to a reasonably prudent and informed physician would indicate the presence of the disease of smallpox, and if you find that said disease is a dangerous, infectious and communicable disease, then it became and was the duty of said defendant to report said facts to the proper health authorities of the city of St. Louis, Missouri, and you cannot find against defendant for so doing, even though you should find that as a matter of fact plaintiff was not suffering from said disease."

*Report to Health Authorities.*

Appellant contends that the instruction did not require the jury to find that Amyx prescribed for or attended appellant as her physician. In other words, respondent must bring himself within the terms of the ordinance or he is without defense. We cannot agree to this contention. The public health is of the greatest concern to all. By law its keeping rests with the attending physicians, householders and health officers. Public policy favors the discovery and confinement of persons afflicted with contagious diseases, and we think it is not only the privilege but the duty of any citizen acting in good faith and on reasonable grounds to report all suspected cases that examination may be made by experts and the public health thereby protected. We hold this may be done without being subjected to liability for damages. To hold otherwise would not only invite indifference at the expense of society but the fear of liability would well nigh destroy the efforts of officials to protect the public health.

Any citizen may without malice and with probable cause bring about the arrest and prosecution of another without liability in damages. We think one who reports a suspected case of a contagious disease to the health officers in good faith and on reasonable grounds should have like protection. Respondent Amyx did not commit appellant to Koch's Hospital. She was committed by the proper city authority. Amyx's interest in making the report was that of a citizen interested in the public health, and the health officers had a corresponding interest. The report of Amyx to the Health Department may be likened to communications classified as qualifiedly privileged in libel and slander cases. The rule is stated as follows:

"A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do. This general idea has been otherwise expressed as follows: A communication made in good faith on any subject-matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation." [17 R. C. L. 341, sec. 88, and cases cited.]

It is not charged or claimed that Amyx acted in bad faith, and we think the instruction is well enough.

Even if Instruction 7 were erroneous, the appellant invited the court to submit the case on that theory. Her instruction numbered 1 told the jury she could recover against Amyx if they found the following facts: "(1) That he voluntarily examined plaintiff; and (2) pronounced her suffering from smallpox; and (3) plaintiff was not so afflicted; and (4) *exhibited no symptoms of that disease;* and (5) *said defendant had no reasonable ground to believe she was so afflicted;* and (6) notified the City Health Department she was suffering from smallpox; and that (7) as a result of all these she was forwarded to the pesthouse." (Italics ours.) Instruction 7 is the substantial counterpart of Instruction 1. Appellant is bound by her theory of the case in the trial court. [Olfermann v. Ry. Co., 125 Mo. l. c. 415, 28 S. W. 742.] This contention is overruled.

Appellant contends the court was in error in giving instructions numbered 8 and 9, as follows:

"8. The court instructs the jury that if you find that the defendant, Dr. Amyx, was the regular physician of the family of the plaintiff and had been in the habit of treating the plaintiff, and

**Erroneous but Not Prejudicial.**

other members of the family, and that the plaintiff's mother called with the plaintiff at the office of the defendant, Dr. Amyx, for the purpose of herself being treated by him for some ailment, and that at the time plaintiff's mother called the attention of said defendant to, or defendant himself observed the presence of some disease and with the consent and acquiescence of the mother examined the evidences of such condition for the purpose of diagnosis, or treatment, then defendant was attending said plaintiff within the meaning of the ordinance read in evidence.

"9. If you find that the defendant Amyx was attending the plaintiff, as defined in the preceding instruction numbered 8, and that the plaintiff presented evidences which indicated to said defendant, and which to a reasonably prudent and informed physician would indicate, the existence of the disease of smallpox, and if you find that such disease is an infectious or contagious disease, then it became and was the duty of said defendant under the ordinance read in evidence to report the same to the health commissioner of the city of St. Louis, and you cannot find against said defendant for so doing even though you should find as a matter of fact plaintiff was not suffering from said disease."

It is claimed there is no evidence tending to show appellant's mother consented to and acquiesced in the examination of the appellant by Amyx. The only witnesses testifying on the subject were appellant, her mother and Amyx. Appellant and her mother testified they went to the office of Amyx for the sole purpose of having the mother treated; that the mother jokingly remarked to the doctor that he should be careful about being too close to appellant for she had a slight rash on her hands; that the doctor glanced at appellant's hands, left the room, returning in five or ten minutes and announced that appellant had smallpox.

Amyx testified that in greeting the appellant on her entrance to the office he placed his hand on her head and discovered several vesicles on her forehead just inside the hair line; that he made a more careful examination by looking at her hands and found there pustular eruptions; that he removed one of her shoes and stockings and examined the sole of her foot and that he then told the mother he would have to report the case to ascertain positively if it was smallpox.

We find no evidence tending to show the mother consented to and acquiesced in the examination of appellant by Amyx. It was error to give the instructions.

Was the error prejudicial? We have ruled that Instruction 7 correctly declared the law. The only difference in Instructions 7 and 9 is

the requirement in Number 9 that the jury find that Amyx was attending the appellant as defined in instruction numbered 8. Under instruction numbered 9 the jury could not return a verdict for defendant Amyx unless they found the facts set forth in Instruction 7. We do not think the giving of Instructions 8 and 9 could have been prejudicial, and so rule.

Appellant contends the court was in error in giving Instruction No. 4, as follows:

"4. The court instructs the jury that if you find and believe from the evidence that when defendant, Martin C. Woodruff, examined the

**Assumption of Fact.** plaintiff, if you so believe and find he had reasonable grounds to believe that the public health required that she be quarantined to prevent other persons from becoming infected with smallpox, the plaintiff cannot recover damages from defendant Martin C. Woodruff, and your verdict in this case must be in favor of said defendant."

It is claimed Instruction 4 is erroneous because: "(a) that it did not require the jury to find that he had made any examination at all; (b) that the jury were not required to find that he had used the slightest degree of care or exercised the least skill in making an examination and diagnosis; (c) that it assumed as an undisputed fact that the plaintiff was suffering from smallpox at the time."

Instruction 4 was qualified by the condition that if the jury should believe and find he had examined her. They did not assume he had made an examination. However, the petition charged that Woodruff

**Reasonable Grounds.** made a superficial examination. Appellant, her mother and Woodruff testified to the examination. This testimony is not contradicted and the case was tried on the theory of an examination. Therefore it would not have been error for the court to assume in instructions the existence of this fact. [Phelps v. Zinc, 218 Mo. l. c. 580, 117 S. W. 705.]

It is next urged the jury was not required to find that Woodruff used care and skill in making the examination. Appellant's Instruction No. 2 is as follows:

"If you find and believe that on the second day of May, 1919, the plaintiff was not afflicted with smallpox and did not exhibit or manifest any symptom of said disease, and that said defendant Woodruff had no reasonable ground to believe that she was afflicted with smallpox at that time, and if you further find and believe that said defendant Woodruff forwarded her to the pesthouse and she there contracted the disease of smallpox and suffered therefrom, then you will find in favor of the plaintiff and against the defendant, Martin C. Woodruff."

This instruction is the counterpart of respondent Woodruff's Instruction 4 in that it requires the jury to find that Woodruff had

no reasonable ground to believe appellant was afflicted with smallpox. Again, appellant is bound by her theory of the case in the trial court.

Woodruff is charged with negligence in that in wanton disregard of his duties as an officer and of the danger to which appellant was exposed he wantonly and recklessly pronounced her suffering from smallpox and committed her to the hospital. For the jury to return a verdict for Woodruff it was not necessary for them to find the appellant did not have smallpox. All they were required to find was that Woodruff had reasonable grounds to so believe. If he had reasonable grounds to so believe, he could not have acted wantonly and recklessly. [Brown v. Purdy, 22 N. Y. Sup. Ct. 109, 8 N. Y. Supp. 143.]

The instruction required the jury to find Woodruff had reasonable grounds to believe that the preservation of the public health required that she be quarantined to prevent other persons from becoming infected with smallpox. This in effect required the jury to find that defendant Woodruff had reasonable grounds to believe she had smallpox. In so instructing the court did not assume appellant had the smallpox.

Appellant directs our attention to the case of Ex parte Shepard, 195 Pac. (Cal. App.) 1077. In this case the petitioner was arrested charged with conducting an assignation house. She was confined in jail for about ten minutes and removed to the city hospital where she refused to submit to an examination to determine if she was afflicted with a contagious disease. The officers did not claim to be holding her as the result of an examination, but undertook to justify her detention on mere suspicion and until she submitted to an examination. Of course, she was discharged.

Attention is next directed to the case of Crayton v. Larabee, 220 N. Y. 493. In this case the defendant health officers quarantined plaintiff in her home. At the time a woman living in a house adjoining plaintiff's home had the smallpox. Plaintiff sued the officers for damages. The officers rested their defense on an ordinance. The trial court ruled that unless the plaintiff had been in fact exposed the officers had no lawful right to quarantine her; that good faith and reasonable grounds were no justification. Under this ruling the plaintiff recovered and defendants appealed. On review it was ruled the officers were vested with discretionary power and for a mere error of judgment were not liable. We think the ruling is against the contention of appellant.

Attention is next directed to the case of Ex parte Smith, 146 N. Y. 68. In this case the petitioners were quarantined in their home because they refused to be vaccinated. It was ruled the officers had no such authority and the petitioners were discharged.

These cases in no way sustain the contention of appellant. We think the instruction correctly declared the law and so rule.

Appellant contends the refusal of a new trial because of misconduct of juror George Graf was an abuse of the court's dis-

**Misconduct of Juror.** cretion and constituted reversible error. The evidence tending to show his conduct is as follows:

L. H. Becker testified as follows:

"I have known George Graf who served as a juror in the case of McGuire v. Amyx, for fifteen years and our relations are friendly. I had a conversation with him on the evening of the ninth of November in the basement of our church. He is a member of our school board, and on this occasion he and another member of the board and I were discussing if the children should be vaccinated. I am principal of the school, and we discussed it generally. Mr. Graf mentioned during the course of the conversation that he was on an interesting case on the smallpox question, but he didn't mention any name or any other facts. He told me that a rash was discovered on a girl's hand and that the doctor had sent her to the hospital; that the girl was then found not to have smallpox, but after ten days she was sent back and she then developed smallpox, and that now the case was being tried. He then said he thought a doctor might make a wrong diagnosis and was not to be blamed for that, and we all thought the same way. He also said that the experts of the hospital ought not to make a wrong diagnosis; that they should have known whether it was smallpox or not, and we agreed with him; and that is all I remember that he said. I didn't know that this was McGuire's case until the next morning when I read the account of it in the newspaper. Mr. Graf stated it would be improbable for three physicians to make a mistake. He did not say he was in favor of the doctors and would vote for them. He said one doctor might be wrong but he didn't see how experts should make a mistake.

"Cross-examination: These conversations were incidental to our conversation as to whether or not the school children should be vaccinated. I got no definite impression as to how Mr. Graf would decide the case and did not learn anything about the issues. I did not undertake to influence him. We agreed that experts ought not to make mistakes, but that ordinary doctors might make one."

Mr. Graf testified as follows:

"I was a member of the jury in this case and met Mr. Becker at a church social given by the ladies of the church. We had a conversation about vaccinating the school children. My youngest daughter attends this school, and her chum got scarlet fever, and when this case came up I told Mr. Becker I thought we should bring it before the board that none of our pupils should attend school unless vaccinated. He replied that he didn't see why I was so insistent. So

then I said I was on a jury where a girl had been sent to the hospital supposed to be suffering from smallpox, and two doctors diagnosed it and later on it seemed they claimed she didn't have smallpox, and after all I thought could it have been possible if the child had been vaccinated. I did not state to Mr. Becker that the doctor was not to blame for making the wrong diagnosis. I did not state experts of the hospital ought not to make a wrong diagnosis and that they should knew whether it was smallpox or not. I don't think we mentioned a thing about the case other than I have said. No names, no dates or anything else was mentioned. There was no discussion as to whether the doctors were or were not to blame for the mistaken diagnosis. I decided this on the evidence and the instructions.

"Cross-examination. I did not tell Mr. Becker and others about the facts of the case except what I have heretofore stated. I did not state that it might be possible for one doctor or a private practitioner to be mistaken but the other two experts couldn't be mistaken. When the school board met on the following Monday I brought up the question of vaccination. I was one of the jurors who signed the verdict for defendants."

While the conduct of the juror was improper, it appears that no attempt was made to influence him. The claim of appellant is that the evidence shows the juror had formed an unfavorable opinion of the plaintiff's case before the testimony in her behalf had been concluded. We think that many, if not all jurors, have impressions as the case proceeds. It is to be expected. These impressions may be and often are changed on a full hearing of the evidence and instructions by the court. The statements made by the juror were incidental to the discussion about vaccinating the school children and there is no indication of prejudice. He was not acquainted with the parties. We think the trial judge did not abuse his discretion, and this contention is overruled. [Kennedy v. Holladay, 105 Mo. 33, 34, 35, 16 S. W. 688; Feary v. Met. Street Ry., 162 Mo. 75, 62 S. W. 452; Fendler v. DeWald, 14 Mo. App. 60; Tatlow v. Grantham, 66 Mo. App. 509; Paramore v. Lindsey, 63 Mo. 63; Jackson v. Smith, 21 Wis. 26; Clement v. Spear, 56 Vt. 401; Darby v. Calhoun, 1 Mill Const. 398; Clarke v. Town Council, 18 R. I. 283; Scott v. Reyer, 5 Leg. Gaz. 73; Goodright v. McCausland, 1 Yeats, 372; Strauss v. Dashney, 9 Ohio Dec. 329; 4 C. J. 782; State v. Latimer, 116 Mo. 524, 22 S. W. 804; Dysart-Cook Mule Co. v. Reed, 114 Mo. App. 1. c. 307, 89 S. W. 591; Turnbow v. Rys. Co., 277 Mo. 1. c. 654, 211 S. W. 41.]

Finding no prejudicial error, the judgment is affirmed. All concur.