KATHRYN DAVIS, Respondent, v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Appellant, No. 41610—233 S. W. (2d) 679.

Division Two, October 9, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, November 13, 1950.

*Charles L. Carr, Hale Houts, J. D. James* and *Hogsett, Trippe Depping, Houts & James* for appellant.

*Trusty, Pugh & Green* and *Guy W. Green, Jr.,* for respondent.

[680] BARRETT, C.—This action for personal injuries by a passenger against a carrier was submitted upon the hypothesis of the relationship and circumstances from which the jury could reasonably draw the inference that the plaintiff's injuries were caused by the negligence of the defendant. While the evidence of the parties was in conflict on the issue of negligence it is now tacitly admitted that the plaintiff made a submissible case. The jury assessed the plaintiff's damages at $12,000.00 but the trial court required a remittitur of $4,000.00 and the carrier appeals from the final judgment of $8,000.00.

The appellant contends, first, that it is entitled to a new trial because the trial court erroneously and prejudicially instructed the jury, particularly in giving instruction number three. As we have said, by instruction number two, the plaintiff's case was submitted upon the hypothesis of the relationship and that "the streetcar gave an unusually violent jerk or lurch, causing plaintiff to be thrown around and twisted, and to be thrown into the lap of a passenger by whom she had been standing, * * * and * * * that as she started to get up, said streetcar gave another violent and unusual jerk and lurch, * * * and that she was thrown around and backward and against a seat or rod * * * if you

so find, *then you are instructed that such facts, if you believe them to be true, are sufficient circumstantial evidence to warrant a finding by you that the defendant was negligent*; and you may so find, *unless you find and believe from other facts and circumstances in evidence that the occurrence was not due to negligence of the defendant \* \* \**." At the behest of the appellant the court gave instruction C. That instruction defined "preponderance or greater weight of the evidence" and said: "The Court instructs the jury that the burden is upon the plaintiff to prove her case by a preponderance, that is, the greater weight of the credible evidence." It concluded with the paragraph, "If, therefore, you find the evidence touching the claim of negligence against the defendant does not preponderate in favor of the plaintiff, or is evenly balanced, then and in that case plaintiff is not entitled to recover against the defendant and you will find your verdict for the defendant." Duncan v. St. Louis Pub. Serv. Co., 355 Mo. 733, 197 S. W. (2) 964. At the plaintiff's request the court then gave instruction three which the appellant claims was prejudicially erroneous. Instruction three is as follows:

[681] "Instruction No. C submits to you the issue of what is known as burden of proof and its being upon the plaintiff throughout the trial. So in connection with this issue of burden of proof you are instructed that if you *believe and find* from the greater weight of the credible evidence *the propositions and issues to be as submitted to you by Instruction No. 2,* then it would be your duty to find that the *plaintiff had met and carried such burden of proof* required by the law and instructions *and that defendant was negligent.*

"And on the issue of negligence of the defendant as submitted to you by Instruction No. 2, you are instructed that such negligence need not be proven by direct and specific testimony, but such *negligence may be inferred* by the jury *from the facts and circumstances in evidence,* unless the jury finds from the evidence to the contrary."

The appellant's twofold objection is to the italicized portions of the instruction. It is insisted that the first paragraph of the instruction deprived the appellant of the benefit of its instruction C on the burden of proof and erroneously advised the jury that the plaintiff had sustained the burden of proof and defendant was negligent, if the jury found "the propositions and issues to be as submitted to you by Instruction No. 2" because one of the propositions submitted by instruction two was "that the occurrence was not due to negligence of the defendant." The appellant says that instruction three is a "counter burden of proof instruction" and creates a vicious circle; it improperly refers to "burden of proof" as an "issue" and advised the jury that the plaintiff had met the burden of proof and that the defendant was negligent

merely if it found the issues of instruction two for the plaintiff. It is urged that the second paragraph of the instruction erroneously assumed the truth of "the facts and circumstances in evidence" and erroneously authorized the jury to infer negligence from "facts and circumstances in evidence" without requiring the jury to find that the same were true.

It must be noted that there is no objection to instruction two which hypothesizes liability and directs a verdict for the plaintiff "unless you find and believe from other facts and circumstances in evidence that the occurrence was not due to negligence of the defendant." And in this latter connection, the appellant's evidence tended to show that it was not negligent and its instructions A and B exonerated it if the jury found the facts and circumstances as set forth in those instructions. In general the principal instructions on behalf of both parties were drawn in conformity with the suggestions of McCloskey v. Koplar, 329 Mo. 527, 46 S. W. (2) 557 and Harke v. Haase, 335 Mo. 1104, 75 S. W. (2) 1001. It may be that instruction three is a "counter burden of proof instruction," and, since the subject was adequately covered by other given instructions, the trial court could have refused to give it. Bolino v. Illinois Ter. R. Co., 355 Mo. 1236, 200 S. W. (2) 352. The instruction is experimental in character (Trusty, Constructing and Reviewing Instructions, pp. 54-58 supp.; Compare: Morris v. E. I. Du Pont De Nemours, 351 Mo. 479, 173 S. W. (2) 39) and in some respects the terminology and its connotation is unusual. In one sense burden of proof was an "issue" but it was not an "issue" in the sense that the defendant's negligence was an "issue." The instruction appears to have been excerpted and compounded from Rasp v. Baumbach, (Mo.) 223 S. W. (2) 472, Lanasa v. Downey, (Mo. App.) 201 S. W. (2) 179 and Bolino v. Illinois Ter. R. Co., supra. However the Rasp and Lanasa cases were not res ipsa loquitur cases and in the Bolino case the defendant's burden of proof instruction was refused and the objections made to the plaintiff's instruction here were not raised against the plaintiff's instruction in the Bolino case.

And the question is whether, in the circumstances presented, the instruction is prejudicially erroneous. Bolino v. Illinois Ter. R. Co., 355 Mo., l.c. 1245, 200 S. W. (2), l.c. 357. Considering all the instructions (Rasp v. Baumbach, 223 S. W. (2), l.c. 474) does instruction three improperly place or shift the burden of proof? Does it in any manner relieve the plaintiff of his burden? Are the instructions so confusing, ambiguous or misleading that the jury was misdirected to the prejudice of the defendant? [682] 64 C. J., Secs. 619, 757, pp. 710, 979; 53 Am. Jur., Sec. 676, p. 520; 38 Am. Jur., Sec. 363, p. 1073. The instruction may have minimized the emphasis and force of instruction C but it did not deprive the defendant of its benefit. It may have brought the jury back to in-

68

struction two but if ·the jury found "from the greater weight of the credible evidence" the hypothesis of instruction two has not the plaintiff in truth and in fact met and sustained its burden of proof? The appellant says that instruction three advised the jury that the plaintiff had sustained her burden of proof even though the jury believed "that the occurrence was not due to negligence of the defendant." But before the jury could find liability "by the preponderance or greater weight of the credible evidence" it necessarily had to reject the ·hypothesis that the defendant was not negligent and find affirmatively, in view of the burden of proof instructions, that the defendant was negligent as hypothesized in instruction two. As a matter of fact the thing that the plaintiff had to prove, by the preponderance or greater weight of the evidence, was the positive or affirmative of "not due to negligence of the defendant" and that plainly is the affirmative hypothesis of instruction two and its essential meaning and the meaning of instruction C are not changed or modified by instruction three.

It is urged that the second paragraph of instruction three relaxed the requirement of instruction two and is in conflict with it because ·it assumed the truth of "the facts and circumstances in evidence" and authorized the jury to infer negligence from "facts and circumstances in evidence" without requiring the jury to find that the same were true. But in both instructions C and three the "negligence" and the "facts and circumstances" referred to as constituting negligence were the facts and circumstances hypothesized in instruction two which the jury were expressly required to find before they could return a verdict for the plaintiff. The instruction (three) concludes with "unless the jury finds from ·the evidence to the contrary" and, in view· of instruction two and its hypothesis, may not be said to assume the existence of any facts or circumstances in evidence.

As we have indicated, the instruction is not a model and the court could have refused it but it must· be remembered that the court gave the instruction and passed upon the prejudicial effect of its deficiencies when it overruled the motion for a new trial. Rasp v. Baumbach, (Mo.) 223 S. W. (2), l.c. 474. When all the instructions are considered it may not be said that the giving of instruction three was prejudicially erroneous or that its deficiencies are of such magnitude as to warrant the granting of a new trial. Mo. R. S. A., Sec. 847.123; Bolino v. Illinois Ter. R. Co., 355 Mo., l.c. 1245, 200 S. W. (2), l.c. 357; Lanasa v. Downey, supra.

It is insisted, second, that the court erred (a) in permitting the plaintiff to amend her petition at the trial to include the claim of a fractured vertebra and in overruling the defendant's application for a continuance because of the amendment and (b) in admitting evidence as to aggravation of plaintiff's pre-existing arthritic condition

of which there was no allegation in the petition. The action was commenced on the 27th day of May 1947 and when the trial began on the 6th day of April 1949 the plaintiff was permitted to amend her petition by interlineation by adding to the allegations of her injuries "compression fracture of 7th dorsal vertebra." While the jury was being selected defendant's counsel stated that he had received notice of the amendment on the previous day and, relying on the prior allegations, had not procured an X-ray examination and was not prepared to meet that issue. Subsequently the defendant filed a verified application for a continuance and in overruling the motion the court said: "The Court overruled the application for continuance with supporting affidavit, but will state to defendant's attorney that if he desires an X-ray examination during the course of the trial the Court will see to it that he gets it." In response defense counsel said: "Counsel for defendant states that he will try to arrange to get a doctor who will examine and [683] testify, between now and this evening. *If, however, all of the X-rays that were taken of the plaintiff are introduced in evidence this afternoon it may be possible that I can have a doctor examine those X-rays. * * * I do not think there would be any need for further X-ray pictures to be taken.*" As to arthritis, the appellant says that the plaintiff's doctors first testified that the plaintiff had a long-standing case of arthritis and that "persons suffering with arthritis were more susceptible to injury than persons otherwise normal; and that persons may have arthritis for years without suffering pain, but an injury may bring on pain in the arthritic area." It is said that there was no pleading of aggravation of arthritis and that such condition was an item of special damage not included in the claim for general damages. Hibbler v. Kansas City Rys. Co., 292 Mo. 14, 237 S. W. 1014. In our view of the matter it is not necessary to say whether the allegations concerning general damages also included the fractured vertebra and the arthritic condition, or whether sufficient and timely objections were made to proof of the arthritic condition. As to that see and compare: Crockett v. City of Mexico, 336 Mo. 145, 77 S. W. (2) 464 and Proctor v. Jacob Ruppert, (Mo. App.) 159 S. W. (2) 328. Neither is it necessary to determine whether the evidence was not directed to proof of "aggravation of pre-existing arthritis" but was directed to "whether an arthritic spine was more susceptible to injury than a normal spine" and "that the arthritis could have been caused by the injury and that an injury to an arthritic back is more painful and takes longer to recover." Again, as to both points, the essential question is whether the defendant was misled and whether the evidence was so prejudicial, in the circumstances, to the defendant's right to a fair trial that a retrial of the cause should be ordered.

The plaintiff was examined by the defendant's doctor on December 3, 1946 and it was his opinion that all of the plaintiff's symptoms were subjective and that she had no serious or permanent disability due to an accident. In the course of the trial, during a recess, another doctor examined the plaintiff and the X-rays she had introduced in evidence. The plaintiff's two sets of X-rays were taken in July 1947 and March 1949. He said that there was a slight wedging of the seventh dorsal vertebra but in his opinion the wedging was due to posture and natural causes. He testified that the plaintiff's X-rays did not reveal a compression fracture of the seventh dorsal vertebra and, in his opinion, her vertebra had never been fractured. He said that there were "spurs" in that area of long-standing, five or ten years, but "these spurs are nature's response to long-standing irritation in this area from wear and tear and faulty posture, * * *" and were not due to any injury. He said, "The spurs, which at times is called arthritis—I do not think it is, because she has no evidence of arthritis elsewhere—which I think is merely nature's response to poor posture and long-standing wear and tear, and the relaxed arches." He thought, if she now had any pain in her back, that it was due to a series of osteopathic treatments. In these circumstances it cannot be said that the trial court abused its discretion in permitting the amendment as to the vertebra and in overruling the defendant's application for a continuance. Turnbow v. Kansas City Rys. Co., 277 Mo. 644, 211 S. W. 41; Reed v. Koch, (Mo. App.) 282 S. W. 515, 520. In Simon v. S. S. Kresge Co., (Mo. App.) 103 S. W. (2) 523, the trial court sustained the defendant's motion for a new trial upon the ground that the court had erred in refusing to grant a continuance after permitting an amendment as to the plaintiff's injuries In affirming the judgment the court said, "the question of whether an amendment to a pleading should be allowed during the course of a trial, and, if so, whether a continuance should follow if applied for, are all matters reposing largely in the sound discretion of the trial court" and the test of whether the court abused its discretion is whether the court's terms protected the rights of the party adversely affected by affording a reasonable opportunity to meet the allegations of the amendment. 17 C. J. S., Sec. 74, p. 250; Turnbow v. Kansas City Rys. Co., supra. Furthermore, [684] in view of the manner in which the defendant met the issues of both the fractured vertebra and the arthritis (by proof that even by the plaintiff's X-rays there was no fracture and that any "spurs," not arthritis, were due to natural causes) it may not be said that the amendment or the evidence were prejudicially erroneous. Crockett v. City of Mexico, 336 Mo., l.c. 154, 77 S. W. (2), l.c. 468.

After the jury had deliberated for some time the court had them return to the courtroom when it appeared that they might be

unable to agree upon a verdict. The court inquired of the foreman whether they might accomplish anything by further deliberation and the foreman said, "I would like to clarify some of the instructions, if that is admissible." The court said, "Suppose you ask the question that is in your mind." The foreman said, "The question is whether the streetcar company was negligent." The court said, "That is the whole case. You will have to determine that from the facts you find, under the instructions." The foreman replied, "The instructions are both ways." The court said, "There is one set of instructions there that if you find the facts to be so and so you will find a verdict for the plaintiff; and there is another set of instructions that if you find the facts to be so and so, then you find for the defendant." The foreman said, "I believe under those conditions we should deliberate a little further." The court: "That is all there is to it, now, which set of facts you find to be true." The defendant now urges that the court's answers were prejudicially erroneous because the jury was given to understand that there was no contest about a second issue, the damages if the defendant was negligent. It is urged that the court's remarks assumed a controverted fact, the issue of damages. The defendant admits that it made no objection to the colloquy and did not raise the question in its motion for a new trial but urges that it was "plain error affecting substantial rights" from which manifest injustice resulted and that this court should, therefore, consider the matter and award a new trial. Sup. Court Rule 3.27. The circumstances complained of are in nowise comparable to the occurrence in Hartgrove v. Chicago, B. & Q. R. Co., 358 Mo. 971, 218 S. W. (2) 557. As a matter of fact they fall within and are governed by the occurrences and the rules set forth in Schonwald v. F. Burkart Mfg. Co., 356 Mo. 435, 202 S. W. (2) 7 and Counts v. Thompson, 359 Mo. 485, 222 S. W. (2) 487. In the Schonwald case it was held that somewhat similar circumstances did not warrant the application of our rule 3.27 when the defendant had failed to make timely and proper objection so as to give the trial court an opportunity to pass upon the matter and its effect.

During the second day of the trial, at the noon recess, a woman, a friend of juror Love's, walked up to plaintiff's counsel and asked for his card. Counsel gave her the card and she and juror Love left the courtroom together. After the trial it developed that juror Love had had a claim against the defendant and had failed to report the fact when the panel were asked on the voir dire examination whether any of them had ever had a claim against the defendant or its predecessors. It is now urged that these two occurrences, together with the nine-man verdict signed by juror Love, demonstrated such misconduct and prejudice on his part as a juror that the trial court erred in refusing to grant a new trial upon this ground. As to the first occurrence, which defendant's counsel observed and reported, counsel

72

stated that there was no conversation between plaintiff's counsel and the woman and that plaintiff's counsel was not guilty of any misconduct. Subsequently the trial judge went into the matter fully and it is sufficient here to say that the court did not abuse its discretion in refusing to discharge the jury because of this unfortunate occurrence. Jacobs v. Danciger, 344 Mo. 1042, 130 S. W. (2) 588; Consolidated School Dist. v. West Missouri Power Co., 329 Mo. 690, 46 S. W. (2) 174; McGuire v. Amyx, 317 Mo. 1061, 297 S. W. 968; Paul v. Dunham, (Mo. App.) 214 S. W. 263.

The facts as to juror Love's undisclosed claim against the defendant were these. On the 14th day of December 1933 [685] Love was driving his cousin's automobile when it was damaged, probably sideswiped, by a streetcar. It was his version that his cousin had insurance and that his cousin's insurance company handled the matter. In any event he did not recall any personal injuries and did not employ an attorney to make a claim on his behalf. On the 4th day of January 1934 he did sign a release and the defendant issued a check in the sum of $10.00 to "B. A. Love and Walter W. Shaw, his attorney" and the check was endorsed and cashed by them. Love testified that he did not report the claim when questioned on voir dire because he had no recollection of the entire incident until after the trial when someone showed him the release and the canceled draft. In these circumstances it is not possible to plainly draw the inference of intentional concealment or deception and there is nothing in the occurrence to indicate animosity or ill-will on the part of the juror as was the case in Piehler v. Kansas City Pub. Serv. Co., 357 Mo. 866, 211 S. W. (2) 459. ''An unintentional failure to disclose information as to matters not connected with the case does not necessarily show prejudice on the part of a juror. * * * In this case, except for his failure to disclose his past claim for injuries the record is silent as to any bias or prejudice harbored by the offending juror or any fact or circumstance from which prejudice might be reasonably inferred. If the conduct of the juror amounted to deception and the bus company was thereby deprived of a fair trial, the trial court had full discretion to set aside the verdict and order a new trial. Had it done so, this court would be 'liberal in upholding the court's action.' * * * The trial court found otherwise, and refused to disturb the verdict. In so doing it in nowise abused its discretion.'' O'Brien v. Vandalia Bus Lines, Inc., 351 Mo. 500, 503, 173 S. W. (2) 76, 77. In the O'Brien case it had been ten years since the juror's claim, and in this case fourteen years elapsed after the ten dollar settlement of Love's claim. The trial court went into the matter fully and it may not be said that the court abused its discretion in refusing to grant a new trial. Lineker v. M.-K.-T. R. Co., (Mo. App.) 142 S. W. (2) 356.

It is also insisted that the final judgment for $8,000.00 is excessive. It is said "that defendant's evidence as to the extent of plaintiff's injuries would not support a recovery in excess of a few hundred dollars" but, of course, the excessiveness of the verdict may not be considered from that viewpoint but must be considered from the more favorable viewpoint of the plaintiff's evidence. Williams v. Illinois Central R., 360 Mo. 501, 229 S. W. (2) 1. Moreover, we are confronted with the fact that the trial court carefully considered the matter and required a remittitur of $4,000.00 from the original $12,000.00 verdict. Schaefer v. Transamerican Freight Lines, (Mo.) 173 S. W. (2) 20, 25. The plaintiff was forty-three years of age at the time of the trial and according to her evidence she had lost over a thousand dollars in wages because of the occurrence and her resulting injuries and had incurred medical expense of approximately two hundred dollars. At the time of the occurrence, and since, she has had the subjective symptoms of pains in her back. On June 19th, 1946, five days after the occurrence, one doctor found an injury to her coccyx, "bent to practically a right angle." He was also of the opinion that she had a sacroiliac sprain. This doctor testified that the X-rays revealed a compression of the seventh dorsal vertebra. Other doctors described the vertebra as "wedge-shaped," and expressed their opinions, in answer to hypothetical questions, that she "possibly" or "probably" received the injury on June 14, 1946 in the described accidental injury. Some thought that the wedging could be "developmental" and that it "could come from a compression fracture and injury." In short the injuries are somewhat comparable to those in Harvey v. Gardner, 359 Mo. 730, 223 S. W. (2) 428, probably a little more serious, and not so serious as the injuries in Weisman v. Arrow Trucking Company, (Mo. App.) 176 S. W. (2) 37. In the latter case a $7,500.00 verdict for four fractured vertebrae, a cut on the head and lacerations of the feet and arms was deemed excessive and reduced by $1,000.00. In the Harvey case an $8,000.00 verdict was [686] reduced in the sum of $3,000.00. But in neither of those cases had the trial court considered the matter and required a substantial remittitur as the court did here. In view of the trial court's action it is not possible for this court to confidently say, even though evidence of severe injury is not all it should be, as the defendant urges in accordance with the Weisman case, that the verdict is yet excessive by $1,000.00. Donley v. Hamm, (Mo.) 98 S. W. (2) 966, 969; Arno v. St. Louis Pub. Serv. Co., 356 Mo. 584, 202 S. W. (2) 787.

Accordingly the judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.