Theodore **TRIPLETT**, Plaintiff-Respondent,

v.

**ST. LOUIS PUBLIC SERVICE COMPANY,**
a Corporation, Defendant-Appellant.

No. 30554.

St. Louis Court of Appeals.

Missouri.

Feb. 21, 1961.

Motion for Rehearing or to Transfer
to Supreme Court Denied
March 24, 1961.

Frank B. Green, St. Louis, for defendant-appellant.

Donald S. Hilleary and Harry L. Hilleary, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

This is an action to recover for injuries and damages alleged to have been suffered when an automobile owned and operated by plaintiff was struck from the rear by one of defendant's streetcars. In brief, the contested factual issue was whether plaintiff, intending to make a left turn, had stopped ahead of the streetcar for a sufficient length of time for the operator to have stopped, or whether plaintiff cut in and came to rest so closely ahead of the streetcar that the operator could not stop in time to avert the accident. Verdict and judgment below was for plaintiff in the sum of $15,000, and defendant appealed.

Three assignments of error are raised by defendant. The first two relate to plaintiff's instructions deemed to be prejudicially erroneous, but in view of the conclusion we have reached as to the third assignment, and the opportunity plaintiff will have to modify his instructions on a retrial of the case, they need not be considered.

Defendant's third point is that it should have been granted a new trial because on voir dire examination one of the jurors made a material misrepresentation as to his qualifications, in that he denied that he had ever made a claim or filed a suit, when, in fact, he had filed a suit to recover for personal injuries and damages to his car; and that the defendant did not learn of the misrepresentation until after the conclusion of the trial of the present case. The record shows that on voir dire examination Juror Heihn was asked the question by defendant's counsel, and answered, as follows:

"Mr. Green: Mr. Heihn, I will ask you the same question. Have you or any member of your family or someone living in your household ever had a claim or lawsuit against any person or company?

"Mr. Heihn: No, sir."

A hearing was held on defendant's motion, and Heihn was called as a witness in support thereof. He admitted that in 1957 he had filed a suit in the Magistrate Court of the City of St. Louis against William H. Luyties and the Walker Pharmaceutical Company, in which he had sought a judgment for personal injuries and damages to his automobile resulting from a collision of Luyties' car with his. He stated that he had been knocked unconscious in the accident;

that his shoulders and neck were injured; that he had suffered from osteomyelitis before the accident, and that afterwards circulation difficulty developed which resulted in an ulcer on his right leg; that he was under the doctor's care for about a year succeeding the collision, and would have to return because the difficulty with his leg was starting all over again; that he was forced to wear an elastic bandage, and would have to do so the rest of his life; that the damages to his car amounted to about $285, but that instead of having it repaired he had sold it for junk, receiving $35 for it; that following the accident he had not been able to work for approximately seven months, during which time he could hardly walk; and that figuring everything, he had lost over $2400 as a result of the accident. Heihn identified his signature on the petition filed in the Magistrate Court, as well as on the release by which a compromise of his suit was effected on December 8, 1959, and testified that he had received the sum of $1500 in settlement.

When questioned as to the proceedings in the present case he stated that he remembered that the Clerk of the Court had sworn all of the jurors to give truthful answers to the questions to be propounded by the lawyers; that he knew he was under oath at the time he answered the questions of the lawyers on both sides; and that he understood that the questions were being asked for the purpose of determining his qualifications to sit as a juror. He admitted that in the voir dire examination that he was juror number 15; stated that he paid attention and listened when all of the jurors were questioned; recalled that a man was excused and that a lady replaced him, and that she in turn was removed but couldn't remember why; recollected that counsel for the defendant had asked the question "Have you or any member of your family or someone living in your household ever had a claim or lawsuit against any person or company?" of some of the other prospective jurors but couldn't recall that the question was asked of each and every one;

remembered that it was asked several times before he was reached; and recalled that in response to the question some of the jurors told about their claims. Heihn's explanation for his failure to tell of his lawsuit was that he understood the question put to him to be whether or not any member of his family had ever had a claim or suit; that he didn't think the word "family" included him, and thought it referred to his wife and children; that neither of them had ever had a claim or suit; and for that reason he had answered the question in the negative.

Able and industrious counsel for the respective parties have cited numerous cases in their briefs, all of which we have read and considered, as well as others disclosed by our own research. The principles declared by such authorities are clear and undisputed, and may be concisely restated The right of trial by jury guaranteed by our Constitution, if it is to be worth anything, must mean the right to a fair and impartial jury. Piehler v. Kansas City Public Service Co., 357 Mo. 866, 211 S.W.2d 459. A litigant is therefore entitled to a jury composed of twelve impartial persons; for although a civil case may be decided by the vote of three-fourths of that number, a party has the right to have that decision, whether for or against him, based on the honest deliberations of twelve such individuals. Lee v. Baltimore Hotel Co., 345 Mo. 458, 136 S.W.2d 695, 127 A.L.R. 711. It is fundamental that a prospective juror is not the judge of his own qualifications. Bass v. Durand, 345 Mo. 870, 136 S.W.2d 988. And to the end that a party may intelligently exercise his challenges, it is the duty of a juror on voir dire examination to fully, fairly and truthfully answer all questions directed to him. Girratono v. Kansas City Public Service Co., Mo., 272 S.W.2d 278. Hence, a juror's intentional concealment of a material fact may require the granting of a new trial. Woodworth v. Kansas City Public Service Co., Mo., 274 S.W.2d 264. For bias and prejudice on the part of a juror may be inferred from his in-

tentional concealment of such information. Girratono v. Kansas City Public Service Co., Mo., 272 S.W.2d 278. But an unintentional failure to disclose information not directly connected with the case does not necessarily show prejudice on the part of the juror so as to call for the trial of the case anew. Davis v. Kansas City Public Service Co., Mo., 233 S.W.2d 679.

■■■ In the final analysis, therefore, the question of what result should follow the failure of a juror to correctly answer a question touching his qualifications depends upon whether or not he was guilty of an intentional concealment. Primarily, the determination of that question must be left to the sound discretion of the trial court. Reich v. Thompson, 346 Mo. 577, 142 S.W. 2d 486, 129 A.L.R. 795. Nevertheless, the exercise of such a discretion is subject to judicial review, and if an appellate court concludes from the record that an abuse of discretion unmistakenly appears, it is its duty to reverse the ruling. Piehler v. Kansas City Public Service Co., supra; Harrison v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 348. In that connection it should be noted that, as has been often said, appellate courts are more liberal in upholding a trial court's action in sustaining a motion for a new trial than in denying it. Woodworth v. Kansas City Public Service Co., supra.

■ A thorough study of the entire record compels the conclusion that the juror by his answer intentionally concealed the information sought to be elicited from him. The transcript shows that on voir dire examination counsel for the plaintiff asked the panel a number of questions as to whether any of them had ever been a passenger on a streetcar when it struck a stopped or moving automobile. All remained silent, except Juror Johnston, who inquired whether counsel was talking about a passenger. Receiving an affirmative answer, Johnston volunteered the information that he was a bus driver, and pointed out that none of counsel's questions had therefore applied to him.

Counsel stated that he appreciated Johnston's action in speaking up, and Johnston was then excused and replaced by Juror Loesch.

The record shows that when counsel for defendant arose to commence his interrogation of the panel he stated:

"May it please the Court: *I may have but one question, but I am going to ask that question to each individual* and it is just about the reverse of the one Mr. Hilleary asked you. I will start with Mr. Huddleston in the back row. Mr. Huddleston, have you or any member of your household—that would be somebody living in your household—or anyone like that ever had a claim or a lawsuit against any person or company for personal injuries? (Emphasis supplied.)

"Mr. Huddleston: Have I had one?

"Mr. Green: Have you or any member of your immediate family, somebody living in your household, ever had a claim against any person or company for personal injuries?

"Mr. Huddleston: Yes.

"Mr. Green: Did you have a claim?

"Mr. Huddleston: No. It was my wife. She wasn't my wife at the time."

Having concluded his questioning of Huddleston, Juror No. 1, counsel then turned to Juror No. 2, and stated:

"Mr. Miller, I will ask you the same question. Have you or any member of your immediate family or someone living in your household ever had a claim or lawsuit against any person or company?"

This reference of defendant's counsel to the "same question" was constant. The record shows that in addition to Jurors No. 1 and No. 2 it was also made as to Jurors No. 6, No. 7, No. 9 and No. 14. Furthermore, the record shows that the question heretofore quoted was, in fact, asked of each and

every juror, from No. 1 through No. 14, except in two instances. By the time counsel had reached Juror No. 6, Mrs. Gratley, the question had obviously become so repetitious that when he stated "Mrs. Gratley, I will ask you the same question. Have you or —," the record shows that the juror interrupted to answer in the negative by shaking her head—and when asked if her action meant that neither she, nor any member of her family or someone living in her household had ever had a claim or lawsuit against any person or company, she replied "No, sir, we haven't." Juror No. 12, Mr. Barks, similarly interrupted the question after counsel had gotten as far as " * * * Have you * * *," and answered "No, sir."

Of the sixteen members of the panel questioned by defendant's counsel before Juror Heihn was reached (two were excused, for what reasons does not appear from the transcript) six either had had a claim of their own, or some member of their family had had one; and in some of those instances counsel inquired whether the juror would be influenced in any way by the occurrence.

It was not until all of the foregoing had transpired that defendant's counsel finally reached Juror No. 15, Mr. Heihn. The record reveals that the question was not asked of him without any preliminary statement; instead, it shows that counsel prefaced the question with the statement that, in itself, had become commonplace: "Mr. Heihn, I will ask you the *same question.*" (Emphasis supplied.) At the hearing on the motion for a new trial Heihn testified that he fully understood that the questions were being asked for the purpose of determining his qualifications. He also stated that he was paying attention when the jury was being impaneled, that he listened to the examination of all of them, and that he heard the question "Have you or any member of family, etc." asked of some of them, but that he couldn't "recall whether you stated that in every case on each individual." Heihn did not say that the question "Have you or any member of your family * * *" was not asked of him. His explanation is that he did not understand that the question was put to him in that form, but comprehended it to be "Has any member of your family * * *"; that he understood that it therefore referred only to his wife and children, and that if he had understood the question to have been "Have you * * *" he would have told of his suit. In other words, despite the example set for him by Juror Johnston, he was not going to volunteer any information unless the question precisely called for it. Since he understood the purpose for which he was being examined, and had not forgotten the action he had filed, his explanation at best would indicate a conscious refusal to voluntarily disclose information which he knew bore on his qualifications. Of a somewhat similar situation which existed in Gibney v. St. Louis Transit Co., 204 Mo. 704, 103 S.W. 43, 47, the court quoted with approval from Pearcy v. Michigan Mut. Life Insurance Co., 111 Ind. 59, 12 N.E. 98:

" 'We think that the question asked the juror required him to answer as to the policy taken out on his own life for the benefit of his wife. This is our conclusion upon the assumption that the question was that which appellee maintains it was. It was not incumbent upon appellee to minutely cover by a long series of specific questions all phases of the subject; but it was enough to ask such a question as would indicate to the mind of a fair and reasonable man what information the examining counsel sought to elicit. It seems clear that such a question as was asked Bowman ought to have drawn from him the fact that he had taken out a policy on his own life for the benefit of his wife; for the question certainly indicated that information as to his interest in the company, as well as his connection with it, was sought by the counsel conducting the examination.' "

It has also been said that: "* * * Honest men do not hesitate to divulge information touching their qualification as jurors." Bass v. Durand, supra [345 Mo. 870, 136 S.W.2d 990].

It is, of course, possible for a juror to misunderstand a question. Lineker v. Missouri-Kansas-Texas R. Co., Mo.App., 142 S.W.2d 356. Had the question in this case been propounded to the panel collectively, or if Heihn had been questioned very early in defendant's voir dire examination, there might be some basis upon which to accept his explanation. But in the face of the record before us (and in justice to the trial court it should be noted that it is not apparent whether he had the benefit of the record at the time he ruled) it unduly taxes our credulity to ask us to believe that a juror can listen to the identical question propounded to fourteen or more other members of a panel, and then misunderstand the same question when it is asked of him—particularly when he is first told that it is the same question.

We are fully aware that this unfortunate situation was not one of plaintiff's making, and that "* * * The granting of a new trial may seem to be a severe penalty to impose * * *." Piehler v. Kansas City Public Service Co., 357 Mo. 866, 211 S.W.2d 459, 463. As was said there: "* * * if liability were certain and the case clearly concerned only the measure of damages it could not be said that the court had abused its discretion in refusing to grant a new trial." But in this case, as in that, there existed a sharp dispute as to that issue, and the rule is that "* * * 'Where there is a dispute as to liability, and an objectionable juror is permitted to try the case, it is difficult to conceive how that would be harmless error, unless waived by the losing party, even though there be a unanimous verdict.'" Webb v. Missouri-Kansas-Texas Ry. Co., 342 Mo. 394, 116 S.W.2d 27, 29. There is abundant authority that in such a situation an appellate court will reverse the judgment and re-

mand the case for a new trial. Piehler v. Kansas City Public Service Co., supra; Bass v. Durand, supra; Gibney v. St. Louis Transit Co., supra.

The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is reversed and the case remanded for a new trial.

ANDERSON, P. J., and WOLFE, J., concur.