Michael MARSHALL,
Plaintiff–Respondent,

v.

Charles E. BROWN,
Defendant–Appellant.

No. 40945.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 7, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 14, 1980.

Ben Ely, Ely & Cary, Hannibal, Ben Ely, Jr., Kortenhof & Ely, St. Louis, for defendant–appellant.

James F. Koester, St. Louis, David L. Baylard, Shifrin, Treiman, Dempsey, Barken & Ulrich, Clayton, for plaintiff–respondent.

STEPHAN, Judge.

Defendant Charles Brown appeals a judgment of $20,000 entered upon a jury verdict in favor of plaintiff Michael Marshall. The litigation arises from an accident which occurred on October 23, 1975, in which plaintiff's motorcycle was struck in the rear by defendant's automobile. Plaintiff had pulled to a stop at a stop sign. Defendant testified that his attention was momentarily diverted, that when he redirected his observation to the roadway, he saw the motorcycle for the first time, but that it was too late to brake or swerve to avoid hitting it. Finding merit in one of defendant's five assignments of error, we reverse and remand for a new trial.

Defendant first alleges error in the trial court's refusal to permit the questioning of the panel on voir dire as to whether any of the panel members would be prejudiced against defendant because he was black. Plaintiff in this action was white.[1] Early during voir dire, and outside the hearing of the panel, counsel for plaintiff made a motion in limine to prevent inquiry of that nature. Defendant's attorney indicated that the motion was unnecessary because he had no intention of asking such a

question. Voir dire was then conducted by counsel. Plaintiff's counsel probed the panel, inter alia, for possible prejudice against plaintiff because of the fact that he was a police officer. Two panel members who admitted such bias were excused for cause. Following this examination, defense counsel requested permission to question the venire panel regarding possible racial prejudice. This "about–face" apparently resulted from his feeling that a racial factor had been injected *sub silentio* into the proceedings because of the fact that both of the excused veniremen, who admitted a likely prejudice against a white plaintiff, were black. The court's denial of such permission forms the grounds for defendant's first assignment of error.[2]

Defendant cites *Aldridge v. United States*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931), as the primary support for his argument. In that case, tried in federal district court, the Supreme Court overturned the conviction of a black defendant for the murder of a white policeman because of the trial court's failure to question the venire panel regarding the possibility of racial prejudice. The *Aldridge* holding was grounded on the "essential demands of fairness," *Id.*, 310, 51 S.Ct. 471. A subsequent case, *Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), reversed a criminal conviction for a similar reason and expressly based its holding on Fourteenth Amendment due process grounds.

However, subsequent cases have qualified, or at least explained, the *Aldridge–Ham* rulings. In *Ristaino v. Ross*, 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976), the Court found no error in the trial court's refusal to permit voir dire questioning concerning racial bias, and accordingly upheld the conviction, in a Massachusetts state court, of a black defendant for the murder of a white security guard. The Court there

---

1. The panel had no knowledge of defendant's race during voir dire because he was not present at that time. Because he lived in Michigan at the time of trial, he was not to appear until the trial was scheduled to begin, two days after voir dire.

2. At the time of defense counsel's request, the venire panel was composed of seven blacks and eleven whites; the empanelled jury contained seven blacks and five whites.

stated that *Aldridge* should be recognized merely as an exercise of the Supreme Court's supervisory control over lower federal courts,[3] *Id.*, 598, n. 10, 96 S.Ct. 1022 n. 10; and that *Ham* stood for the proposition that interrogation as to racial bias on voir dire is *constitutionally* mandated (and therefore required in state courts as well) only when circumstances "suggest a significant likelihood that a racial prejudice might infect [the defendant's] trial." *Id.*, 598, 96 S.Ct. 1022. See also *United States v. Bowles*, 574 F.2d 970, 973, n. 3 (8th Cir. 1978). In *Ham*, the Court found such circumstances to exist: the black defendant was well known locally for his civil rights activities; his defense at trial was that he was framed on the charge of drug possession by local authorities as a means of harassment because of those activities. The facts in *Ristaino* suggested no such likelihood, the Court finding insufficient an argument grounded principally on the fact that defendant was black while his victim was white.

On the record of the instant case, we find a similar lack of support for the argument that there was a "significant likelihood" that defendant's trial was infected by racial bias. In *Ham*, a racial element was inextricably part of the case: defendant attempted to show that local authorities had a motive to bring false charges against him, a motive based on defendant's race and on his activities concerning racial issues. The case at bar contains no such element. Moreover, in this case a white plaintiff complains of a black defendant's negligence in a common type of automobile accident. An allegation of that type of negligent conduct is in our view much less likely to inflame racial passions than was the criminal narcotics charge brought against defendant in *Ham*.

Prior to plaintiff's voir dire interrogation of the panel, defense counsel and the court concurred that inquiry into possible racial bias was unnecessary. We do not believe it highly significant that two black veniremen subsequently admitted a bias against plaintiff, when the only stated ground for that bias was plaintiff's occupation. Therefore, on the basis of *Ristaino*, we reject *Aldridge* and *Ham* as support for an argument that defendant had a constitutional right to submit the question to the panel.

We turn then to the question of whether the requested interrogation is required under Missouri law.[4] We are not aware of any Missouri cases requiring voir dire questions on possible racial bias. In *State v. Nelson*, 459 S.W.2d 327 (Mo.1970), the trial court addressed the panel as a group and asked about possible bias against a black defendant. Defendant argued on appeal that the question should have been put to each venireman individually. The Missouri Supreme Court held that the limitation by the trial court was not an abuse of its discretion. *Id.*, 331. In so doing, the court did not address the question as to whether *any* interrogation on the racial issue was required in the case. Missouri courts have only said that such inquiry is proper. *State v. Pyle*, 343 Mo. 876, 123 S.W.2d 166, 169–170 (1938); *Hawkins v. Mo. Pac. Ry. Co.*, 182 Mo.App. 323, 170 S.W. 459, 465 (1914).

Absent any requirement in Missouri law of voir dire questions on possible racial bias in this type of a case, we must look to the general rule governing voir dire examination. Such examination is largely a subject for the trial court's control in the exercise of its discretion. The appellate court will interfere with the trial court's rulings only when there has been a manifest abuse of the court's discretion and when there is a probability of injury to the defendant. *Hill v. Boling*, 523 S.W.2d 867, 873 (Mo.App. 1975); *Bunch v. Crader*, 369 S.W.2d 768, 771 (Mo.App.1963). For the reasons enunciated

---

**3.** The Court indicated that had the circumstances of *Ristaino* presented themselves to a federal court, the Court's supervisory directive in *Aldridge* would have required the trial court to investigate the possibility of racial bias on defendant's request. *Ristaino*, supra, 598, n. 9, 96 S.Ct. 1022, n. 9.

**4.** The Supreme Court in *Ristaino* specifically indicated that the states are free to allow or require questioning not mandated by the Constitution.

above, we find no grounds to overrule the trial court in this case. The trial court apparently believed that the circumstances of this case, despite the admission of bias against police officers by two black veniremen, did not warrant the injection of a racial issue into voir dire questioning. We do not view this position as unreasonable or an abuse of discretion. We believe that adoption of defendant's argument would be virtually tantamount to holding that inquiry of this nature is mandatory, on request, whenever a member of a racial minority is involved in a lawsuit. Under the supervisory power of the federal appellate courts, federal district courts have a non-constitutional duty to make such inquiries when defendant is a member of a racial minority group. *U. S. v. Bowles*, 574 F.2d 970, 973 (8th Cir. 1978). We find no support for such a proposition in the Missouri decisions. We find no support for an argument that counsel is to be permitted greater latitude in inquiry into racial bias than that allowed in other areas, or that appellate courts are to judge the courts' rulings in that regard under different standards. Finding no clear abuse in the court's ruling and no significant probability of injury to defendant, we rule the point against him.

■ Defendant further alleges that the trial court erred in refusing to send the jury a hospital report produced after examination of plaintiff shortly after the accident, which report the jury had requested to see during its deliberation. The report had been admitted into evidence but had not been given to the jury during trial. During his closing argument, plaintiff's counsel had told the jury that he would submit it for their viewing during deliberation if defense counsel would agree. However, the report was subsequently withheld from the jury because of objection by plaintiff's counsel on the ground that the report identified plaintiff's religion among his personal data. Defendant now contends that the court's failure to send the report to the jury, following the offer to do so by plaintiff's counsel if defense counsel were willing, raised an inference that defendant was withholding damaging information con-

tained in the report. Although we find the tactics here employed by plaintiff's counsel somewhat unusual, we do not believe that substantial prejudice to defendant resulted therefrom. This, for the reason that both parties presented evidence to the effect that a ruptured disc would not manifest itself until a substantial period of time after the trauma and conceded that the hospital report, made on the day of the accident, showed that plaintiff had a sore back. In any event, we would not expect plaintiff's counsel on retrial to offer again to send the report to the jury subject only to defense objection.

■ Defendant further contends that the trial court erred in overruling his objections to references, during plaintiff's opening statement and the testimony of plaintiff's expert witness, to the possibility of future surgery to correct plaintiff's back problem. Defendant argues that plaintiff's petition made no claim for such damages and that the need for such surgery is wholly speculative.

Items of special damage must be specifically stated. Section 509.200, RSMo.1969. Expenses for medical services are special damages. *Moore v. Parks*, 458 S.W.2d 344, 347 (Mo.1970); *Layton v. Palmer*, 309 S.W.2d 561, 567 (Mo.1958). One paragraph of plaintiff's petition alleged:

"6. That as a direct and proximate result of the said occurrence and injuries sustained by plaintiff, plaintiff has been caused to incur medical expenses for medicines, doctors, x–rays, medical institutions and prescriptions in the approximate sum of $300.00 *and will in the future be required to expend further sums,* the exact amount of which cannot be definitely ascertained at this time." (Emphasis added.)

We believe that under *Condos v. Associated Transports, Inc.*, 453 S.W.2d 682, 688–689 (Mo.App.1970), this paragraph states a claim for future surgery with sufficient specificity had plaintiff desired to seek those expenses as special damages.

However, we do not decide the issue on that basis, for it is apparent that plaintiff introduced the testimony regarding surgery not as proof of a separate item of damages but as proof of the nature and extent of the physical pain and mental anguish claimed. The reference to surgery came in the following exchange, after plaintiff's expert medical witness had testified that plaintiff's injuries were permanent:

"Q (By Mr. Koester) Is there anything that can be done for him to get some relief or help?

A I would say bear it as long as you can, and if you can't you'll have to have surgery but it's up to the individual.

MR. ELY: I'll object to any reference to surgery, it's not pled and claimed against my client at this time.

THE COURT: Overruled at this time.

THE WITNESS: It's my opinion that it's up to the patient himself, unless there is some tremendous evidence of neurological evidence of leg problems, numbness in the leg, or a dropped foot, and if it ever reached that I would insist he see a neurosurgeon or a competent orthopedic man and have surgery done, but until that time if he's able to bear the pain, and I don't know how much pain he can stand, he can carry on because it will not disappear of itself."

The witness made no estimate of the cost of such surgery. We find *Boehm v. St. Louis Public Service Co.*, 368 S.W.2d 361 (Mo. 1963), which presented a similar issue, dispositive. The court there stated:

"Evidence of the foregoing operations, etc. would have been inadmissible to augment plaintiff's damages *as special items of damage* . . . since operations of this kind are not the necessary and inevitable result of the type of injury pleaded. [Citations omitted.] It does not follow, however, that the evidence was inadmissible for all purposes. . . . Plaintiff specifically pleaded serious, painful, permanent and disabling injuries to the bones, tendons, tissues, etc. of all parts of her leg, disfigurement and impairment of function. *Plaintiff had a right to prove the necessary treatment for the injuries which were pleaded.* Plaintiff's counsel's statements at the time this evidence was challenged clearly indicate that it was offered for this reason. . . . Evidence as to the 'mode and incidents' of this necessary treatment was admissible under the allegations to which reference has been made, [citation omitted], for the purpose of showing the seriousness of the injuries to plaintiff's leg and her probable suffering." [Emphasis in original.]

*Id.*, 368–369. See also *Condos v. Associated Transports, Inc.*, supra, 689–690; *Gilchrist v. Kansas City Rys. Co.*, 254 S.W. 161, 164 (Mo.1923). The court in *Boehm* noted at 369 that plaintiff's instructions made no reference to surgery as an item of damage and that defendant had the right to offer an instruction limiting the purpose for which the jury could consider the challenged evidence. That situation obtained in this case. We rule the point against defendant.

We believe, however, that a new trial is mandated in this case because of the failure of a venireman to disclose on voir dire that she had made a claim for damages suffered in a previous automobile accident. Intentional concealment of information on voir dire may be grounds for the granting of a new trial, since bias and prejudice of the venireman may be inferred from such concealment. *Beggs v. Universal C. I. T. Credit Corp.*, 387 S.W.2d 499, 503 (Mo. banc 1965); *Triplett v. St. Louis Public Service Co.*, 343 S.W.2d 670, 672 (Mo.App.1961). Unintentional failure to disclose information does not necessarily give rise to such an inference. *Triplett*, supra, 673. Determination of whether concealment was intentional or not is left to the discretion of the trial court, its ruling to be reversed only upon a clear showing of abuse of that discretion. *Beggs*, supra, 503–504; *Triplett*, supra, 673. In that connection, however, it should be noted that appellate courts are more liberal in upholding a trial court's granting of a motion for a new trial than in upholding a trial court's denial of such a motion. *Brady v. Black & White Cab Co.*,

357 S.W.2d 720, 726 (Mo.App.1962); *Triplett*, supra, 673. We find the trial court's ruling that the concealment was unintentional in this case to be unsupported by the record of the voir dire proceedings and the juror's testimony at the hearing on defendant's motion for new trial.

During a comprehensive voir dire interrogation, counsel for defendant propounded this question to the jury panel:

"I'd like to ... ask if there is anyone here that ever had a claim, ever made a claim. In other words, where you were in some sort of accident and you made a claim for injury.... This could be an automobile accident; a motorcycle accident; it could be a slip and a fall on a sidewalk or in a store; ... it could be anything of that type where you were injured and where you said you were injured because of the fault of someone else and you asked for money damages, money compensation for that particular incident."

Although a number of veniremen responded to the question, Mrs. Shirley Nickel remained silent. Later during voir dire, plaintiff's counsel asked the panel whether any of them had received a settlement for damages of any kind without making a formal claim or request for such damages. Although her answer was more properly responsive to counsel's previous question, Mrs. Nickel disclosed her prior accident in the following exchange:

"MRS. NICKEL: I was involved in an accident in an intersection, and I was knocked from the side, but there were no injuries and the insurance company took care of both cars.

MR. KOESTER: Did you go to the hospital?

MRS. NICKEL: No, I did not. I went to the doctor and I had two broken ribs, but when I called her insurance agent, they said they didn't pay off for anything like that.

MR. KOESTER: They did not pay you?

MRS. NICKEL: No.

MR. KOESTER: Was the fact no payment was made to you because you did not want to be paid, or they did not want to pay you?

MRS. NICKEL: I really don't know what it was.

MR. KOESTER: Did you ask for a settlement from them?

MRS. NICKEL: No."

At the hearing on the motion for new trial, it was adduced that Mrs. Nickel was involved in an automobile accident on December 1, 1973. She indicated that she did not recall telephoning the other party's insurer, the Automobile Club Inter–Insurance Exchange[5] (insurer) other than the one time to which she referred during voir dire; and that she had not filled out any forms for them concerning the accident. However, Stephen Finney, an adjuster with the insurer, testified that he had had "a number of conversations" with Mrs. Nickel concerning her right to compensation; Finney estimated that number at four. There is nothing in the record to support that estimate, but the record does contain an intra–office memorandum from Finney directing that the file on the case be kept open longer than usual because Mrs. Nickel had been so "adamant" about her right to collect from the insurer. Furthermore, the record contains a Report of Accident, which Mrs. Nickel filled out for the insurer five days after the accident. Following the usual identification of parties and witnesses and description of the incident, the report form concluded with the following: "I hereby make claim for the sum of 523.82 + plus all medical costs ...." It was signed by Mrs. Nickel. Mrs. Nickel did not file suit or engage the services of an attorney in her dealings with the insurer. Nevertheless, the picture that emerges from the evidence adduced at the hearing is one of a woman who quite actively pursued her claim with the insurer.

---

5. This is the same company about which the panel had been queried by plaintiff's attorney in the "insurance question" during voir dire.

At the hearing, Mrs. Nickel explained that she had not understood what was meant by "claim," that she had believed she had not "made a claim" if she requested compensation from the insurer but was refused such payment. Missouri cases have held such confusion of veniremen over the meaning of the word "claim" to excuse similar concealment of information on voir dire. See, e. g., *Barb v. Farmers Insurance Exchange*, 281 S.W.2d 297, 302 (Mo.1955). However, in presenting this issue to the panel on voir dire, counsel for defendant spoke not only in terms of "making claims" but of "asking for money" and "requesting money" as well; he used the terms interchangeably. At the outset of the interrogation on the issue he asked the panel whether any of them had "asked for money damages, money compensation for that particular incident." He individually questioned another venireman (who indicated that he had been involved in an accident): "Did you make any claim or request any money out of it?" The questions, posed in the barest of layman's language, were unequivocal.[6] Mrs. Nickel's silence in relation thereto cannot be adequately explained by her expressed confusion over the term "claim."

During his interrogation, plaintiff's counsel asked Mrs. Nickel individually: "Did you ask for a settlement from [the insurer]?" Mrs. Nickel later explained her negative response to this question by stating that her own insurance company had paid her bills. We find this explanation inadequate. Her statement may explain why she did not litigate her unsuccessful claim, but in no way explains why she gave an inaccurate answer during voir dire denying that she had made a claim. We think it reasonable to infer from Mrs. Nickel's attempted explanation a belief on her part that, since she received full compensation from her own insurance company, she was not a disgruntled, unsuccessful claimant likely to be biased. A venireman, however, is not the proper judge of his or her qualifications to sit as a juror. *Beggs*, supra, 503. Giving deference, as we must, to the trial court's

ability to observe the attitude and demeanor of Mrs. Nickel at the hearing, we nonetheless do not think that she offered credible or sufficient explanations for her concededly incorrect responses on voir dire.

We therefore remand for a new trial. We recognize that this result may seem harsh, since the defect in question was utterly beyond plaintiff's control. However, as was stated in *Beggs*, supra, 503, the constitutional right of every citizen to a trial by jury, to be meaningful, requires a fair and impartial jury. Mrs. Nickel's conduct on voir dire deprived counsel of the opportunity to insure that his client, defendant, was judged by such a jury.

We do not consider defendant's final point, contesting the amount of the jury award, because of our disposition of the case.

The judgment is reversed and the cause remanded for a new trial.

GUNN, P. J., and PUDLOWSKI, J., concur.

---

**6.** In fact the first venireman to respond to defendant's counsel had been previously involved in two accidents and testified that he had received compensation for neither.